UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>KEVIN WALKING EAGLE,<br><br>Defendant. | 5:08-CR-50100-01-KES<br><br><br>ORDER DENYING MOTION FOR RELIEF UNDER THE FIRST STEP ACT |

Defendant, Kevin Walking Eagle, moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 390. Plaintiff, the United States of America, opposes the motion. Docket 396. For the following reasons, the court denies defendant's motion for compassionate release.

## BACKGROUND

On November 18, 2009, Walking Eagle pleaded guilty to continuing a criminal enterprise in violation of 21 U.S.C. § 848(a), (c). Dockets 238, 248. On March 1, 2010, the court sentenced Walking Eagle to 240 months in custody and 5 years of supervised release. Docket 285 at 2-3; Docket 278. Walking Eagle is eligible for home confinement on April 30, 2025, and his current anticipated release date is October 31, 2025. Docket 392 at 801.

Walking Eagle is incarcerated at Federal Correctional Institution (FCI) Englewood in Littleton, Colorado. Docket 395 at 1. As of September 3, 2020, there is currently one active COVID-19 case among FCI Englewood's inmates, one inmate and six staff members have recovered from COVID-19, and there

are zero deaths from COVID-19. *See BOP: COVID-19 Update*, Federal Bureau of Prison, https://www.bop.gov/coronavirus/ (last visited on Sept. 4, 2020).

Walking Eagle is 47 years old. Docket 393 at 1. His chronic health conditions include hypertension, obesity, an enlarged heart, and bradycardia. *Id.* at 68, 72, 797. Walking Eagle is 255 pounds and 70 inches tall. Docket 392 at 33. Based on his weight and height, his body mass index (BMI) is 36.6. *Id.* at 780; Docket 393 at 2; *Adult BMI Calculator*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited on Sept. 4, 2020).

On May 12, 2020, Walking Eagle submitted an Informal Request form to FCI Englewood staff, requesting documentation of an earlier denial of home confinement. Docket 390-1 at 14. Staff responded to the request on May 19, 2020. *Id.* at 15. On May 28, 2020, Walking Eagle submitted a Request for Administrative Remedy, stating that the unit manager's denial of home confinement was incorrect. *Id.* at 12. Walking Eagle also requested that he be released to home confinement. *Id.* The Warden received the request on June 2, 2020, and denied the request on June 8, 2020. *Id.* at 12-13. On July 21, 2020, Walking Eagle's counsel submitted a formal request for compassionate release to the warden. Docket 395-1.

Walking Eagle filed a pro se motion with the court for relief under the First Step Act. Docket 390. Walking Eagle's counsel subsequently filed a supplement to his pro se motion. Docket 395.

**DISCUSSION**

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). In 2018, Congress passed the First Step Act (FSA). Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit inmates in specified circumstances to file motions in the court where they were convicted seeking compassionate release. § 603. Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a sentence must comply with the 18 U.S.C. § 3553(a) sentencing factors and "applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's policy statement, which was adopted before the FSA, requires both "extraordinary and compelling reasons" and that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G. § 1B1.13(1) (U.S. Sentencing Comm. 2018). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Walking Eagle argues that the "unprecedented and extraordinary risk posed by the global COVID-19 pandemic," together with his health conditions satisfies the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 395 at 1. Walking Eagle requests a sentence of time served and, if deemed necessary by the court, a period of home confinement as

a condition of supervised release. *Id.*

I.   **Administrative Exhaustion**

Previously, only the Bureau of Prisons (BOP) Director possessed the authority to bring a compassionate release motion on a defendant's behalf. With the enactment of the FSA, however, Congress has now permitted courts to grant compassionate release on motions filed by defendants "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A).

On May 28, 2020, Walking Eagle submitted a Request for Administrative Remedy, requesting that he be released to home confinement. The warden received this request on June 2, 2020. On July 21, 2020, Walking Eagle's counsel submitted a formal request for compassionate release to the warden. Regardless of which request this court considers to be the formal request to the warden, the 30-day period expired, at the latest, on August 20, 2020. Given that the 30-day waiting period required by 18 U.S.C. § 3582(c)(1)(A) has lapsed, Walking Eagle's motion is ripe for review on the merits.

II.   **Extraordinary and Compelling Reasons**

Section 3582(c)(1)(A)(i) provides that the sentencing court may grant compassionate release based on "extraordinary and compelling reasons[.]" Congress did not define what constitutes "extraordinary and compelling." *See* 28 U.S.C. § 994(t). Rather, the Sentencing Commission was directed to

promulgate "the criteria to be applied and a list of specific" extraordinary and compelling examples. *Id.* Prior to Congress passing the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios. U.S.S.G. § 1B1.13 cmt. n.1(A)-(C). The four scenarios pertain to a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served, and (4) compelling family circumstances. *Id.* Additionally, there is a fifth catch-all category for an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the Director of the Bureau of Prisons. U.S.S.G. § 1B1.13 cmt. n.1(D).

After the FSA was passed, the Sentencing Commission did not update its policy statement because the Sentencing Commission has not had a quorum. *See United States v. Beck*, 425 F. Supp. 3d 573, 579 n.7 (M.D.N.C. 2019) ("As the Sentencing Commission lacks a quorum to amend the U.S. Sentencing Guidelines, it seems unlikely there will be a policy statement applicable to [compassionate-release] motions brought by defendants in the near future."). As a result, district courts are left to determine whether the policy statement of the Sentencing Commission that was in existence when the FSA was passed still applies. *See United States v. Rodd*, 2019 WL 5623973, at *3 (D. Minn. Oct. 31, 2019); *United States v. Brown*, 2020 WL 2091802, at *5-6 (S.D. Iowa Apr. 29, 2020). It is clear that Congress wishes to "[i]ncreas[e] the [u]se . . . of [c]ompassionate [r]elease" by allowing district courts to grant petitions

5

"consistent with applicable policy statements" from the Sentencing Commission. *See* 132 Stat. at 5239; 18 U.S.C. § 3582(c)(1)(A). But the Commission has not addressed whether the policy statement from the old regime is applicable to the new statute nor has it adopted a new policy statement. Because the First Step Act changed the way a compassionate release motion may be brought, "several district courts have concluded that the discretion vested in the BOP Director under the catch-all provision now belongs coextensively to federal judges." *United States v. Condon*, 2020 WL 2115807, at *3 (D.N.D. May 4, 2020) (citing *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019); *United States v. Beck*, 425 F. Supp. 3d 573, 578-80 (M.D.N.C. 2019); *United States v. Cantu*, 423 F. Supp. 3d 345, 352-53 (S.D. Tex. 2019)); *see also United States v. Rivernider*, 2020 WL 597393, at *3 (D. Conn. Feb. 7, 2020). This uncertainty has not yet been addressed by the Eighth Circuit. *See United States v. Rodd*, 966 F.3d 740, 747 (8th Cir. 2020) ("We need not determine whether the district court erred in adhering to the policy statements in § 1B1.13."); *see also United States v. Frith*, 2020 WL 4229160, at *2 (D.N.D. July 23, 2020).

Assuming that the policy statements continue to apply to compassionate release motions brought under the amended FSA, Walking Eagle has failed to show that his health conditions rise to extraordinary and compelling circumstances.

Walking Eagle contends that his circumstances warrant relief under the medical conditions category, U.S.S.G. § 1B1.13 comment note 1(A), and the

6

catch-all provision, U.S.S.G. § 1B1.13 comment note 1(D). Docket 395 at 4-6, 9-14. Walking Eagle argues that his health conditions put him at high-risk of serious complications if he contracts COVID-19. *Id.*

COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. People with the following health conditions are at an increased risk of severe illness from COVID-19: cancer, chronic kidney disease, COPD, immunocompromised state from organ transplant, obesity (a BMI of 30 or higher), serious heart conditions (like pulmonary hypertension), sickle cell disease, and Type II diabetes. *People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/ coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (Aug. 14, 2020). The Centers for Disease Control and Prevention (CDC) also provided a list of medical conditions that *might* put a person at an increased risk of severe illness from COVID-19. *Id.* These medical conditions include asthma (moderate to severe), hypertension or high blood pressure, smoking, liver disease, Type 1 diabetes mellitus, and several others. *Id.*

The court has reviewed the medical records submitted in this case. Walking Eagle's health conditions include obesity, hypertension, an enlarged heart, and bradycardia. With a BMI of 36.6, Walking Eagle is obese, and therefore, he presents the additional risk factor of obesity. The United States appears to concede that Walking Eagle's obesity is an "extraordinary and compelling reason." Docket 396 at 11. Yet, the United States also argues that Walking Eagle does not satisfy the medical conditions category or the catch-all

provision because his obesity and the surrounding circumstances do not prevent him from engaging in self-care to manage his condition and his obesity is not a condition "from which he . . . is not expected to recover." *Id.* at 14-15.

To the extent the United States suggests that obesity standing alone qualifies as a compelling and extraordinary reason warranting release, the court disagrees. "[T]he fact that [Walking Eagle] suffers from obesity during the age of the COVID-19 pandemic does not necessarily mean, on its own, that extraordinary and compelling reasons justify the reduction of his sentence." *United States v. Williams*, 2020 WL 4756743, at *5 (E.D. Pa. Aug. 17, 2020); *see also United States v. McAbee*, No. 4:14-CR-40027-KES, 2020 WL 5231439, at *3 (D.S.D. Sept. 2, 2020) (finding defendant with asthma and a BMI of 30.5 or 31.7 did not establish extraordinary and compelling reasons to justify compassionate release); *United States v. Saenz*, No. 3:10-CR-30027-RAL, 2020 WL 4347273, at *5 (D.S.D. July 29, 2020) (finding defendant with other medical conditions and a BMI between 40 and 44.9 did not establish extraordinary and compelling reasons for compassionate release).

Walking Eagle argues that he has been unable to provide self-care at FCI Englewood because he cannot manage or control his obesity during the COVID-19 pandemic. Docket 395 at 10; Docket 399 at 3. Walking Eagle does not argue that his medical conditions make him unable to provide self-care at FCI Englewood. Rather, he claims that the conditions of confinement make it impossible for him to cure his obesity because he cannot control his diet or exercise while practicing social distancing. *See* Docket 399 at 3. "The language

8

of [U.S.S.G.] § 1B1.13 comment note (A)(ii) contemplates only that it is the medical condition that diminishes the ability to provide self-care, not the conditions of confinement generally." *United States v. Smith*, No. 3:17-CR-30057-RAL, 2020 WL 4904054, at *4 (D.S.D. Aug. 20, 2020).

Walking Eagle's hypertension is listed as a medical condition that *might* increase the risk of severe illness from COVID-19. Walking Eagle's other medical conditions are not listed as conditions that might increase or increase the risk of severe illness from COVID-19.

While some of these chronic conditions may put Walking Eagle at a higher risk of severe illness if he contracts COVID-19, that has not been the case as of yet. *See United States v. Fry*, 2020 WL 1923218, at *1 (D. Minn. Apr. 21, 2020) (holding that to merit compassionate release, inmate "must show more than a mere speculation of the possibility of contracting the virus."). Additionally, there is no evidence in the record to suggest that Walking Eagle has not been able to manage most of his conditions while in the prison environment. Walking Eagle is receiving medical attention and treatment for these conditions, which all appear to be stable or controlled. *See* Docket 393 at 4-7, 11, 17, 763-64 (detailing chronic care visits and medication for bradycardia and hypertension); *id.* at 2 (discussing with Walking Eagle the "importance of regular exercise, healthy weight and weight loss strategies."). "Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Ayon-Nunez*, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) (internal quotation omitted). Thus, the court finds

9

that Walking Eagle does not satisfy the criteria under U.S.S.G. § 1B1.13 comment note 1(A) or U.S.S.G. § 1B1.13 comment note 1(D).

Additionally, Walking Eagle's motion has not shown that the BOP's response to the pandemic at FCI Englewood has been inadequate in any way. *See United States v. Korn*, 2020 WL 1808213, at *6 (W.D.N.Y. Apr. 9, 2020) ("[T]he mere possibility of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme."). At the present time, there is only one active COVID-19 case amongst the inmates, one inmate and six staff have recovered from COVID-19, and there are no deaths from COVID-19. "Thus, it appears that the facility has been responding to and defending against the threats of the virus in a vigorous and generally effective manner." *United States v. Williams*, 2020 WL 4756738, at *4 (E.D. Pa. Aug. 17, 2020); *see also United States v. Berry*, 2020 WL 4035457, at *3 (D.N.J. July 17, 2020) ("[G]iven the markedly restrained progression of the virus within FCI Schuylkill, as compared to within the Delaware Valley region generally, BOP's Action Plan appears to be having a positive impact."). Although Walking Eagle is unable to practice preventative measures as effectively in custody as he would in home confinement, FCI Englewood encourages inmates to wash their hands frequently, wear facial masks, and practice social distancing when feasible. *See BOP Implementing Modified Operations*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Sept. 3,

10

2020). Walking Eagle can do all those recommendations to some extent.

The court believes that Walking Eagle's health conditions are appropriately managed at FCI Englewood, that the facility is engaged in strenuous efforts to protect inmates against the spread of COVID-19, and that it would act to treat any inmate who does contract COVID-19. Although the court in no way underestimates Walking Eagle's health conditions, such ailments, coupled with the present conditions at FCI Englewood, do not establish extraordinary and compelling reasons justifying his early release.

Even assuming Walking Eagle's medical conditions are "extraordinary and compelling reasons warrant[ing] such a reduction" under 18 U.S.C. § 3582(c)(1)(A)(i), the sentencing factors in § 3553(a) do not weigh in favor of a reduction. Walking Eagle was found responsible for distributing 16.9 kilograms of cocaine. PSR ¶ 11. Walking Eagle's criminal enterprise lasted approximately 10 years, from 1998 to 2008. *Id.* ¶¶ 8-9; Docket 240 at 1-2. Walking Eagle was considered a leader/organizer of the enterprise, and he derived all his income from the sale of cocaine. PSR ¶¶ 6, 10, 16, 19; Docket 240 at 3. Considering the facts of the offense and Walking Eagle's lack of criminal history, the court sentenced Walking Eagle to the mandatory minimum of 240 months in custody. Walking Eagle has served approximately 60% of his sentence. Docket 392 at 802. Therefore, the court finds that Walking Eagle's sentence of 240 months in custody with 5 years of supervised release continues to be appropriate for the seriousness of the crime to which he pleaded guilty.

11

## CONCLUSION

Walking Eagle has failed to satisfy the extraordinary and compelling reason standard. Thus, it is

ORDERED that defendant's motion for relief under the First Step Act (Docket 390) is denied.

Dated September 10, 2020.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE
